IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **AIRADIGM COMMUNICATIONS, INC.,** | ) | **Case No. 06-10930** |
| | ) | |
| **Debtor.** | ) | |

**AMENDED PLAN OF REORGANIZATION FOR AIRADIGM
COMMUNICATIONS, INC. AS OF JUNE 13, 2006**

GOLDBERG, KOHN, BELL, BLACK,
 ROSENBLOOM & MORITZ, LTD.
Ronald Barliant
Alan P. Solow
Kathryn A. Pamenter
55 East Monroe Street
Suite 3700
Chicago, Illinois  60603
Telephone: (312) 201-4000
Facsimile: (312) 332-2196

Attorneys for the Debtor and
Debtor-in-Possession

## TABLE OF CONTENTS

Page

ARTICLE I
INTRODUCTION .................................................................................................................. 1

ARTICLE II
DEFINITIONS....................................................................................................................... 1

ARTICLE III
DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS ......................................... 4

ARTICLE IV
TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS ............................................. 5

ARTICLE V
TREATMENT OF CLASSIFIED CLAIMS .......................................................................... 6

ARTICLE VI
MEANS OF IMPLEMENTATION OF THE PLAN .............................................................. 9

ARTICLE VII
EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................................... 9

ARTICLE VIII
RELEASE OF CLAIMS AND MISCELLANEOUS PLAN
PROVISIONS ...................................................................................................................... 10

ARTICLE IX
CONDITIONS TO CONFIRMATION AND EFFECTIVENESS OF
THE PLAN .......................................................................................................................... 10

ARTICLE X
EFFECT OF CONFIRMATION ......................................................................................... 11

ARTICLE XI
RETENTION OF JURISDICTION BY THE COURT....................................................... 12

## ARTICLE I
## INTRODUCTION

Airadigm Communications, Inc., the Debtor in the above-captioned case, hereby proposes the following plan of reorganization pursuant to § 1121(a) of the Code.

## ARTICLE II
## DEFINITIONS

As used in this Plan, the following terms shall have the respective meanings set forth below:

2.1   "Administrative Expense Claim" means a Claim either allowed under Code § 503(b) by a Final Order or incurred by the Debtor in the ordinary course of business after the Petition Date.

2.2   "Allowed Claim" or "Allowed Equity Interest" is a Claim or Interest allowed under Code § 502.

2.3   "Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Wisconsin (the "Bankruptcy Court"), in which the Case is pending pursuant to a referral of jurisdiction by the United States District Court for the Western District of Wisconsin.

2.4   "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

2.5   "Business Day" means any day other than a Saturday, Sunday or a "legal holiday," as defined in Fed. R. Bankr. P. 9006(a).

2.6   "Case" means In re: Airadigm Communications, Inc., Case No. 06-10930.

2.7   "Claim" has the meaning ascribed to it in Code § 101(5), which states as follows:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

2.8   "Code" means the United States Bankruptcy Code, as amended, 11 U.S.C. §§ 101 *et seq*.

2.9   "Confirmation Date" means the date on which the Confirmation Order is entered by the Court.

-1-

2.10   "Confirmation Loan" means the loan to be made by TDS pursuant to Article VI hereof.

2.11   "Confirmation Order" means the order of the Court confirming this Plan.

2.12   "Convenience Claim" means an unsecured Claim that is Allowed in an amount equal to or less than $10,000, or that the holder reduces to $10,000.

2.13   "Court" means: (a) the Bankruptcy Court, (b) any court having competent jurisdiction to enter final orders or judgments, conduct *de novo* review of issues and withdraw any portion of the Case from the Bankruptcy Court and (c) any court having competent jurisdiction to hear appeals or *certiorari* proceedings from any of the foregoing.

2.14   "Debtor" means Airadigm Communications, Inc., a Wisconsin corporation.

2.15   "Disaggregation" means the splitting of a License into two or more FCC authorizations of lesser frequencies than the original License.

2.16   "Effective Date" has the meaning set forth in Section 9.1 hereof.

2.17   "Equity Interest" means common stock or preferred stock in the Debtor authorized or issued before the Confirmation Date, and any rights to acquire or dispose of any such stock.

2.18   "FCC" means the Federal Communications Commission, an agency of the United States Government.

2.19   "Final Order" means: (a) an order or judgment of the Court that has not been stayed and that is no longer subject to appeal, *de novo* review or *certiorari* proceeding, and as to which no appeal, *de novo* review or *certiorari* proceeding is pending; and (b) as to an order of the FCC, an order that is no longer subject to appeal, review or reconsideration pursuant to 47 U.S.C. §§ 402 and 405, and 47 C.F.R. §§ 1.106, 1.108, 1.113, 1.115 and 1.117, and as to which no such appeal, review or reconsideration is pending.

2.20   "Licenses" means the Personal Communications Services licenses granted by the FCC and held by the Debtor as of the Petition Date, consisting of 13 C-Block and two F-Block Licenses covering Basic Trading Areas ("BTAs") in Wisconsin, Iowa and the Upper Peninsula of Michigan as further described in Section 3.3 hereof.

2.21   "Lien" has the meaning ascribed to it in Code § 101(37), which states as follows: "charge against or interest in property to secure payment of a debt or performance of an obligation."

2.22   "MHz Pops" means for a particular License the number of the MHz frequency included in such license multiplied by the total population covered by such license, as shown in Section 3.3 hereof.

2.23  "Miscellaneous Secured Claims" means all Secured Claims not otherwise specifically provided for in the Plan.

2.24  "Partial License" means that portion of a License remaining after Partition or Disaggregation.

2.25  "Partition" means the division of a License into two or more geographic areas, each with a separate FCC authorization.

2.26  "Payment Date" means the fifth Business Day after the Effective Date, or with respect to a specific Claim, the fifth Business Day after the date on which such Claim becomes an Allowed Claim and is payable, whichever is later.

2.27  "Petition Date" means May 8, 2006, the date on which the Debtor filed its petition for relief commencing this Case.

2.28  "Plan" means this Plan of Reorganization for Airadigm, as amended or modified from time to time in accordance with the Code.

2.29  "Priority Claim" means a Claim, other than an Administrative Expense Claim, entitled to priority under § 507 of the Code.

2.30  "Reorganized Debtor" means the Debtor after the Effective Date.

2.31  "Retained Pro-Rata Portion" means, with respect to a payment for a Partial License retained by the Reorganized Debtor, the fraction determined as follows: 1) the MHz Pops with respect to the Partial License retained by the Debtor, divided by 2) the MHz Pops with respect to the entire License from which the Partial License is Partitioned or Disaggregated.

2.32  "Secured Claim" means any Claim that is secured by a Lien that is (a) valid, perfected and enforceable under applicable law on property of the Debtor's estate and (b) not subject to avoidance under the Code or applicable non-bankruptcy law, but only to the extent of the value of the Lien, unless the holder of such Claim makes the election permitted under Code § 1111(b)(2), in which case the Claim is secured by such Lien to the extent of the amount in which such Claim is Allowed.

2.33  "Surrendered Pro-Rata Portion" means, with respect to a credit for a Partial License surrendered by the Debtor to the FCC, the fraction determined as follows: 1) the MHz Pops with respect to the Partial License surrendered by the Debtor to FCC, divided by 2) the MHz Pops with respect to the entire License from which the Partial License is Partitioned or Disaggregated.

2.34  "TDS" means Telephone and Data Systems, Inc., a Delaware corporation.

2.35  "TDS Purchased Claim 1" means the Claim originally held by Ericsson, Inc. and assigned to TDS on March 11, 2004, consisting of Claim nos. 84 and 90, and the

Class 2 Claim under The 2000 Plan. Claim no. 84 was filed with the Court on March 9, 2000, in the amount of $3,257,404.70. Claim no. 90 was filed with the Court on March 9, 2000, in the amount of $61,253,363.06. The Class 2 Claim under The 2000 Plan was allowed in the amount of $71 million. TDS was substituted as claimant for this Claim by an order of the Court dated May 13, 2004.

2.36  "TDS Purchased Claim 2" means the Claim originally held by Oneida Enterprise Development Authority of the Oneida Tribe of Indians of Wisconsin and assigned to TDS on July 8, 2004, consisting of Claim no. 89, represented as the Class 3 Claim under The 2000 Plan. Claim no. 89 was filed with the Court on March 10, 2000, in the amount of $40 million. The Class 3 Claim under The 2000 Plan was allowed in the amount of $40 million. TDS was substituted as claimant by an order of the Court dated August 4, 2004.

2.37  "WWCC" means Wisconsin Wireless Communications Company, a Wisconsin corporation.

2.38  "The 2000 Plan" means that Plan of Reorganization of Airadigm Communications, Inc. dated October 13, 2000, as confirmed by the Court in Case No. 99-33500-11.

Except as otherwise stated in this Plan, all terms used in this Plan that are defined in the Code have the meanings therein ascribed, and this Plan shall be construed in accordance with the rules of construction contained in Code § 102.

## ARTICLE III
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

Claims and interests are hereby designated in the following classes:

3.1  Unclassified Claims consist of all Administrative Expense Claims.

3.2  Class 1 Claims consist of all Claims that are Priority Claims.

3.3  Class 2 Claims consist of the following Sub-Class Claims of the FCC, to the extent that each such Sub-Class Claim is a Secured Claim secured by a Lien on the License described with respect to that Sub-Class:

| SUB-CLASS | BTA | MARKET NAME | FREQ. | MHz | TOTAL AMOUNT* |
|---|---|---|---|---|---|
| 2A | 18 | Appleton, Wisconsin | C | 30 | $8,927,551.35 |
| 2B | 70 | Cedar Rapids, Iowa | C | 30 | $4,654,126.35 |
| 2C | 118 | Dubuque, Iowa | F | 10 | $138,000.00 |
| 2D | 123 | Eau Claire, Wisconsin | C | 30 | $2,834,326.35 |
| 2E | 148 | Fond du Lac, Wisconsin | C | 30 | $1,599,076.35 |
| 2F | 173 | Green Bay, Wisconsin | C | 30 | $7,300,126.35 |
| 2G | 216 | Janesville, Wisconsin | C | 30 | $4,378,726.35 |

-4-

| SUB-CLASS | BTA | MARKET NAME | FREQ. | MHz | TOTAL AMOUNT* |
|---|---|---|---|---|---|
| 2H | 234 | La Crosse, Wisconsin | C | 30 | $5,922,451.35 |
| 2I | 272 | Madison, Wisconsin | C | 30 | $15,530,401.35 |
| 2J | 276 | Manitowoc, Wisconsin | C | 30 | $1,425,601.35 |
| 2K | 279 | Marinette, Wisconsin | F | 10 | $2,255,851.35 |
| 2L | 417 | Sheboygan, Wisconsin | C | 30 | $2,255,851.35 |
| 2M | 432 | Stevens Point, Wisconsin | C | 30 | $2,953,801.35 |
| 2N | 462 | Waterloo, Iowa | C | 30 | $2,585,926.35 |
| 2O | 466 | Wausau, Wisconsin | C | 30 | $3,516,076.35 |

\* Total Amount of Claim is before determination of the amount of the Secured Claims.

3.4   Class 3 Claims consist of the following Sub-Class Secured Claims of TDS, each of which is secured by all of the assets of the Debtor excluding the Licenses, but including the proceeds of any disposition of the Licenses:

   (a)   Sub-Class 3A consists of all Secured Claims of TDS related to the loan made pursuant to Sections 6.2 and 6.3 of The 2000 Plan;

   (b)   Sub-Class 3B consists of all Secured Claims of TDS related to the construction loans made pursuant to Section 6.8 of The 2000 Plan.

   (c)   Sub-Class 3C consists of all Secured Claims of TDS related to the TDS Purchased Claim 1.

   (d)   Sub-Class 3D consists of all Secured Claims of TDS related to the TDS Purchased Claim 2.

3.5   Class 4 Claims consist of all Miscellaneous Secured Claims.

3.6   Class 5 Claims consist of all unsecured Claims other than Convenience Claims, including the Claims of the FCC and TDS identified in Sections 3.3 and 3.4 of this Plan to the extent they are not Secured Claims.

3.7   Class 6 Claims consist of all Convenience Claims.

3.8   Class 7 consists of all Equity Interests in the Debtor.

## ARTICLE IV
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS

4.1   **Payment of Administrative Expense Claims — Generally.** Administrative Expense Claims will be paid in full as follows, except to the extent the holder of any such Claim otherwise agrees:

   (a)   **Professional Fees and Expenses and Administrative Expense Claims Incurred Outside the Ordinary Course of Business.** Administrative

Expense Claims for compensation and expenses awarded under Code § 330 and other Administrative Expense Claims arising outside the ordinary course of business will be paid in full on the Payment Date or such other date as the Reorganized Debtor and TDS agree.

(b) **Ordinary Course Administrative Expenses.** Administrative Expense Claims arising in the Debtor's ordinary course of business after the Petition Date will be paid in the Debtor's ordinary course of business and according to the terms of the agreement giving rise to such Claim, both prior to and after the Confirmation Date, whether or not such Claims have been allowed by Final Orders.

4.2 **U.S. Trustee Fees.** Fees of the United States Trustee, payable under 28 U.S.C. § 1930, shall continue to be payable on their respective due dates in accordance with Code § 1129(a)(12) until the Case is converted, dismissed or closed.

## ARTICLE V
## TREATMENT OF CLASSIFIED CLAIMS

5.1 **Class 1 (Priority Claims).** Class 1 Claims are **unimpaired**. On the Effective Date, or such other date as the Reorganized Debtor, TDS and the holder agree, the Reorganized Debtor will pay the holder of each Allowed Class 1 Claim the full amount of such Claim in cash. Any Class 1 Claims that are not Allowed Claims on the Effective Date will be paid on the Payment Date or such other date as the Reorganized Debtor, TDS and the holder agree.

5.2 **Class 2 (FCC Secured Claim).** Class 2 Claims are impaired.

(a) If the Court determines that any Class 2 Claim of the FCC is a Secured Claim, it shall be allowed as a Secured Claim in the amount determined by the Court and all such claims will be satisfied in full as follows:

**First,** the Reorganized Debtor will determine no later than the eleventh day after the Confirmation Date which Licenses or Partial Licenses it elects to retain and which it elects to surrender; provided that any such election is subject to the approval of the TDS. All Licenses and Partial Licenses will either be paid or surrendered as further described in this subparagraph (a).

**Second,** with respect to each License that the Reorganized Debtor elects to retain, it will pay the holder of the Class 2 Claim secured by that License the full amount of that Secured Claim, without interest (except as provided in Code § 506(b)), in cash on the Payment Date, less a credit for the full amount of payments made by the Debtor on account of the License before the Petition Date.

-6-

**Third,** with respect to each Partial License that the Reorganized Debtor elects to retain, it will pay the holder of the Class 2 Claim secured by the License from which the Partial License was Partitioned or Disaggregated an amount equal to the Retained Pro Rata Portion of that Claim, without interest (except as provided in Code § 506(b)), in cash on the Payment Date, less a credit for the full amount of payments made by the Debtor on account of the License before the Petition Date.

**Fourth,** with respect to each License that the Reorganized Debtor elects to surrender, the Reorganized Debtor will surrender that License on the Payment Date to the holder of the Class 2 Claim secured by that License and shall receive a credit against any Claim held by such holder in an amount equal to the greater of: (a) the current market value of the License as determined by the Court, or (b) the net original bid price for such License, plus the amount of any other payments made by the Debtor on account of the License before the Petition Date.

**Fifth,** with respect to each Partial License that the Reorganized Debtor elects to surrender, the Reorganized Debtor will surrender that Partial License on the Payment Date to the holder of the Class 2 Claim secured by the License from which the Partial License was Partitioned or Disaggregated and shall receive a credit against any Claim held by such holder in an amount equal to the Surrendered Pro Rata Portion of the greater of either (a) the current market value of the License as determined by the Court, or (b) the net original bid price for such License.

(b)    Upon satisfaction of the Class 2 Claims in accordance with the foregoing, the Liens in the Licenses securing such Claims will be released and the Reorganized Debtor will own any Licenses or Partial Licenses it has retained free and clear of all liens, claims or encumbrances.

(c)    If the holder of a Class 2 Claim makes the election described in Code § 1111(b) to treat its entire Claim as a Secured Claim, then (i) it will retain its Lien to the extent of the allowed amount of the Secured Claim, and (ii) the Reorganized Debtor will satisfy the Secured Claim with respect to which such election is made by investing the cash amount that would otherwise be payable (if no § 1111(b) election had been made) under section (a) of this Article to purchase, for the benefit of such holder, either, at the election of Reorganized Debtor, (x) a security representing either an obligation of the United States or an obligation guaranteed by an agency of the United States and backed by the full faith and credit of the United States, or (y) an annuity contract issued by an insurance company having an "A" rating or better from A.M. Best Company or Standard & Poor's. The terms of such security or annuity shall be such that the FCC will receive, in no more than 30 years, deferred cash payments totaling at least the full amount of its Secured Claim, of a value, as

-7-

of the Effective Date, of the License or Partial License that secures such Secured Claim.

5.3  **Class 3 (TDS Secured Claims).** Class 3 Claims are **impaired**. The holder of the Class 3 Claims will retain its Liens until such Claims are satisfied in full, at which time such Liens will be released. The Reorganized Debtor will satisfy the Class 3 Claims in full as follows:

   (a)  The Class 3 Claims will bear interest on the Allowed amount of such Claims from and after the Effective Date at the rate of 10% per annum (or such other rate as the Debtor and TDS agree on or before the Confirmation Date).

   (b)  For the first three (3) years after the Effective Date, the Reorganized Debtor will pay only accrued interest in six (6) semi-annual payments, making the first such payment on the first day of the sixth month following the month in which the Effective Date occurs and each of the next five (5) interest payments on the first day of each sixth month thereafter.

   (c)  Beginning on the first day of the forty-second month after the month in which the Effective Date occurs, the Allowed amount of the Class 3 Claims will be amortized over a term of eighty-four (84) months thereafter, and the Reorganized Debtor will make equal semi-annual installment payments of principal plus accrued interest, with a balloon payment on the first day of the one-hundred-second month after the month in which the Effective Date occurs of the entire unpaid balance of principal and accrued interest.

5.4  **Class 4 (Miscellaneous Secured Claims).** Class 4 Claims are **unimpaired**. On the Effective Date, the Reorganized Debtor shall at its election either: (i) pay in cash the balance due and owing on each Allowed Class 4 Claim, or (ii) surrender the collateral securing the Claim to the holder of the Allowed Class 4 Claim, in full and complete satisfaction of said Class 4 Claim. Holders of Allowed Class 4 Claims shall retain their Liens until such payment or surrender.

5.5  **Class 5 (Unsecured Claims).** Class 5 Claims are **impaired**. Holders of Class 5 Claims will receive common shares of voting stock in the Reorganized Debtor, on the Effective Date (or, as to such Claims that are not Allowed Claims by the Effective Date, on the Payment Date). One common share in the Reorganized Debtor shall be issued to each Class 5 claimant for each $500,000 of the Allowed Claim in full satisfaction of such Claim. To the extent any such claimant would receive a fractional share of common stock, the Debtor at its option may, in lieu of issuing such fractional share, pay that claimant in cash an amount equal to the portion of the Class 5 Claim that would otherwise entitle the holder to such fractional share.

5.6  **Class 6 (Convenience Claims).** Class 6 Convenience Claims are **impaired**. On the Effective Date, the Reorganized Debtor will pay, in cash, the full amount of each Allowed Class 6 Claim, without interest.

5.7   **(Class 7) (Equity Interests).** Class 7 Interests are **impaired**. On the Effective Date, all Equity Interests will be canceled.

## ARTICLE VI
## MEANS OF IMPLEMENTATION OF THE PLAN

6.1   **The Confirmation Loan.** At such time or times after the Effective Date as required for the purposes set forth below, if the Reorganized Debtor does not have sufficient cash, TDS or its designee will make the Confirmation Loan in the amounts necessary to:

(a)   make all cash payments required under this Plan;

(b)   cure defaults on executory contracts and unexpired leases that are assumed in accordance with the provisions of Article VII of this Plan; and

(c)   make such other payments as may be required under this Plan to ensure the Licenses or Partial Licenses to be retained by the Reorganized Debtor are without encumbrances.

6.2   **Terms of the Confirmation Loan.** The amount of the Confirmation Loan will be added to the Allowed Class 3 Claims, will be secured by the same Liens as secure those Claims, and will be paid on the same terms as provided in Section 5.3 of this Plan.

6.3   **Conversion of Debt to Equity.** The Reorganized Debtor will take all steps necessary to cause the authorization and issuance of sufficient shares of common stock in the Reorganized Debtor to satisfy Class 5 Claims in accordance with Section 5.5 of this Plan. Such transfers are intended to be the type of transfer exempt from registration under Code § 1145(a)(1)(A).

## ARTICLE VII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except to the extent the Bankruptcy Court orders otherwise on motion of the Debtor filed no later than the Effective Date, all executory contracts and unexpired leases of the Debtor will be assumed under Code § 365 on the Effective Date. If any party to such a contract or lease wishes to object to such assumption, or alleges that there is a default under such contract or lease that must be cured under Code § 365(b), that party must file an objection no later than the Confirmation Date. If no such objection is filed by that date, that party's objection or allegation of a default will be forever barred and may not be asserted in any subsequent proceeding in any forum.

# ARTICLE VIII
# RELEASE OF CLAIMS AND
# MISCELLANEOUS PLAN PROVISIONS

8.1   General Release of Claims.

    (a)    On the Effective Date, any and all claims, rights, causes of action and remedies under Code §§ 541, 544, 545, 547 through 551, and 553 will be released, and barred, and no proceeding under any such section shall be commenced; provided, however, that any such proceeding commenced by the Debtor before the Effective Date is excepted from this paragraph of this Plan and is retained and may be enforced by the Reorganized Debtor.

    (b)    On the Effective Date, any and all Claims of the Debtor against TDS shall be released and forever discharged. Except as expressly provided in this Plan, as of the Confirmation Date, neither TDS, its affiliates, parents or subsidiaries, nor any of its respective members, shareholders, officers, directors, employees, agents, attorneys, or professionals shall have or incur any liability to the Debtor, the Reorganized Debtor, or to any holder of any Claim or equity interest for any act or omission arising out of or in connection with the Case, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or property to be distributed under the Plan, except for willful misconduct.

8.2   **Retiree and Other Employee Benefits.** No employee benefits will be affected by this Plan. To the extent the Debtor is obligated to provide retiree benefits, as that term is defined in Code § 1114, the Reorganized Debtor will continue to provide such benefits for the duration of the period the Debtor has obligated itself to provide such benefits.

8.3   **Prohibition on Issuance of Nonvoting Equity Securities.** The Debtor's charter shall be amended, if necessary, so that it includes a provision prohibiting the issuance of nonvoting equity securities. There is only one class of securities that possesses voting power.

# ARTICLE IX
# CONDITIONS TO CONFIRMATION AND
# EFFECTIVENESS OF THE PLAN

9.1   **Conditions Precedent to Confirmation.** The condition to the confirmation of this Plan is that the form and substance of the Confirmation Order and this Plan have been approved by the Debtor and TDS.

9.2   **Effective Date.** This Plan will be effective, and the Effective Date will occur, on the later of (a) the eleventh day (or, if that is not a Business Day, the first Business Day thereafter) after the Confirmation Date, unless the Confirmation Order has been

stayed before such eleventh day, in which event the Effective Date will be the first Business Day after the Confirmation Order becomes a Final Order, or (b) the date the Debtor obtains all necessary FCC approval and any other regulatory approval, on usual and customary terms and conditions, that may be required to effectuate this Plan.

## ARTICLE X
## EFFECT OF CONFIRMATION

10.1  **Re-vesting of Assets.** On the Effective Date, all property of the estate shall be vested in the Reorganized Debtor, pursuant to Code § 1141(b) free and clear of all liens, claims and encumbrances.

10.2  **Extinguishment of Liens.** Except as otherwise specifically provided by this Plan, all Liens on property of the Debtor or the Debtor's estate shall be extinguished on the Confirmation Date.

10.3  **Discharge.** On the Confirmation Date, the Debtor shall be discharged from all Claims and all Administrative Expense Claims, to the fullest extent authorized by the Code.

10.4  **Discharge Injunction.** Except as provided in Sections 10.5 and 10.6 hereof, and in addition to the injunctions provided in § 524(a) of the Code, from and after the Confirmation Date, holders of Claims against the Debtor or its assets shall be enjoined from: (a) commencing or continuing any action or proceeding or employing process against the Debtor, the Reorganized Debtor, the property of either of them, or the holders of equity interests of either of them, in an attempt to obtain or realize partial or full satisfaction of any Claim; (b) enforcing or seeking to enforce any such Claim, or taking any steps which will lead to the enforcement of any such Claim against Debtor, the Reorganized Debtor, the property of either of them, or the holders of equity interests of either of them; (c) seeking to set off or recoup any such Claim against any pre-petition or post-petition obligations owed to Debtor, the Reorganized Debtor or a successor in interest of Debtor; (d) seeking to create, perfect or enforce any Lien against property of the Debtor or the Reorganized Debtor or the holders of equity interests of either of them; and (e) all other acts against the Debtor, the Reorganized Debtor, the property of either of them, or the holders of equity interests of either of them, including but not limited to those acts described in Code § 362(a).

10.5  **FCC Regulatory Rights.** Notwithstanding Section 10.4 hereof, the FCC's exercise of its regulatory rights, powers and duties with respect to the Licenses is not enjoined or in any way limited, restricted or affected by this Plan.

10.6  **Plan Enforcement.** Notwithstanding Section 10.4 hereof, after the Confirmation Date, the holder of an Allowed Claim may enforce its rights under this Plan against the Reorganized Debtor and the assets of the Reorganized Debtor,

10.7 **Termination of the Committee.** Any committee appointed under Code § 1102 will be terminated on the Confirmation Date.

## ARTICLE XI
## RETENTION OF JURISDICTION BY THE COURT

After the Confirmation Date, the Court will retain jurisdiction for all appropriate purposes to the extent permitted by applicable law, including but not limited to the following:

11.1 To consider any modification to this Plan, or to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or in the Confirmation Order, to the extent necessary to carry out the purposes and intent of this Plan.

11.2 To hear and determine any objections to the allowance of Claims, and requests for estimation of Claims.

11.3 To hear and determine any and all applications, adversary proceedings, motions and other contested matters not resolved in this Plan.

11.4 To hear and determine any and all applications for compensation of professional services and disbursements and any other similar fees incurred prior to the Confirmation Date.

11.5 To enforce the terms and provisions of payments, rights and interests required or created by this Plan, or by earlier orders of the Court.

11.6 To enter any order necessary to consummate, interpret, and effect the provisions of this Plan and the Confirmation Order, or as may otherwise be required by the Code.

Respectfully submitted this 13th day of June, 2006.

**AIRADIGM COMMUNICATIONS, INC.**

By _____
    Robert J. Galle, Chief Executive Officer

_____

GOLDBERG, KOHN, BELL, BLACK,
  ROSENBLOOM & MORITZ, LTD.
Ronald Barliant
Alan P. Solow
Kathryn A. Pamenter
55 East Monroe Street
Suite 3700
Chicago, Illinois 60603
Telephone: (312) 201-4000
Facsimile: (312) 332-2196