IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re: ) Chapter 11
 )
AIRADIGM COMMUNICATIONS, INC., ) Case No. 06-10930
 )
Debtor. )

# THIRD AMENDED PLAN OF REORGANIZATION FOR AIRADIGM COMMUNICATIONS, INC. AS OF OCTOBER 6, 2006

GOLDBERG KOHN BELL BLACK
 ROSENBLOOM & MORITZ, LTD.
Ronald Barliant
Alan P. Solow
Kathryn A. Pamenter
55 East Monroe Street
Suite 3700
Chicago, Illinois 60603
Telephone: (312) 201-4000
Facsimile: (312) 332-2196

Attorneys for the Debtor and
Debtor-in-Possession

# TABLE OF CONTENTS
Page

ARTICLE I
INTRODUCTION ............................................................................................................. 1

ARTICLE II
DEFINITIONS .................................................................................................................. 1

ARTICLE III
DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS ....................................... 5

ARTICLE IV
TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS ............................................ 6

ARTICLE V
TREATMENT OF CLASSIFIED CLAIMS ....................................................................... 7

ARTICLE VI
MEANS OF IMPLEMENTATION OF THE PLAN ......................................................... 10

ARTICLE VII
EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................................ 11

ARTICLE VIII
RELEASE OF CLAIMS .................................................................................................. 11

ARTICLE IX
CONDITIONS TO CONFIRMATION AND EFFECTIVENESS OF
THE PLAN ..................................................................................................................... 11

ARTICLE X
EFFECT OF CONFIRMATION ...................................................................................... 12

ARTICLE XI
RETENTION OF JURISDICTION BY THE COURT ..................................................... 13

ARTICLE XII
MISCELLANEOUS PROVISIONS .................................................................................. 13

# ARTICLE I
# INTRODUCTION

Airadigm Communications, Inc., the Debtor in the above-captioned case, hereby proposes the following plan of reorganization pursuant to § 1121(a) of the Code.

# ARTICLE II
# DEFINITIONS

As used in this Plan, the following terms shall have the respective meanings set forth below:

2.1 "Administrative Expense Claim" means a Claim either allowed under Code § 503(b) by a Final Order or incurred by the Debtor in the ordinary course of business after the Petition Date.

2.2 "Allowed Claim" or "Allowed Equity Interest" is a Claim or Interest allowed under Code § 502.

2.3 "Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Wisconsin (the "Bankruptcy Court"), in which the Case is pending pursuant to a referral of jurisdiction by the United States District Court for the Western District of Wisconsin.

2.4 "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

2.5 "Business Day" means any day other than a Saturday, Sunday or a "legal holiday," as defined in Fed. R. Bankr. P. 9006(a).

2.6 "Case" means In re: Airadigm Communications, Inc., Case No. 06-10930.

2.7 "Claim" has the meaning ascribed to it in Code § 101(5), which states as follows:

(a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

2.8 "Code" means the United States Bankruptcy Code, as amended, 11 U.S.C. §§ 101 *et seq.*

2.9 "Confirmation Date" means the date on which the Confirmation Order is entered by the Court.

2.10 "Confirmation Loan" means the loan to be made by TDS pursuant to Article VI hereof.

2.11 "Confirmation Order" means the order of the Court confirming this Plan.

2.12 "Convenience Claim" means an unsecured Claim that is Allowed in an amount equal to or less than $10,000, or that the holder reduces to $10,000.

2.13 "Court" means: (a) the Bankruptcy Court, (b) any court having competent jurisdiction to enter final orders or judgments, conduct *de novo* review of issues and withdraw any portion of the Case from the Bankruptcy Court and (c) any court having competent jurisdiction to hear appeals or *certiorari* proceedings from any of the foregoing.

2.14 "Debtor" means Airadigm Communications, Inc., a Wisconsin corporation.

2.15 "Disaggregation" means the splitting of a License into two or more FCC authorizations of lesser frequencies than the original License.

2.16 "Effective Date" has the meaning set forth in Section 9.2 hereof.

2.17 "Equity Interest" means common stock or preferred stock in the Debtor authorized or issued before the Confirmation Date, and any rights to acquire or dispose of any such stock.

2.18 "FCC" means the Federal Communications Commission, an agency of the United States Government.

2.19 "FCC Adversary Proceeding" means that certain adversary proceeding commenced in the Bankruptcy Court on June 30, 2006, entitled <u>Airadigm Communications, Inc. v. Federal Communications Commission</u>, Case No. 06-155-11, and any proceedings related thereto in any Court.

2.20 "FCC Payment Date" means either (a) the tenth Business Day after the later of (i) the date the Confirmation Order becomes a Final Order; (ii) the date the order or judgment in the FCC Adversary Proceeding determining the validity, priority and extent of the FCC's Liens on the Licenses becomes a Final Order; (iii) the date the order or judgment determining the amounts of all Class 2 Claims becomes a Final Order; (iv) the date the Debtor obtains all necessary FCC approvals and any other regulatory approvals, on usual and customary terms and conditions, that may be required to effectuate this Plan and such approval or approvals become a Final Order or Final Orders; and (v) the last date on which the holder of a Class 2 Claim may make the election described in Code § 1111(b) pursuant to § 5.2(f) of this Plan, or (b) such earlier date as the Reorganized Debtor and TDS may agree.

2.21 "Final Order" means: (a) an order or judgment of a Court relating to the Case that has neither been stayed nor is subject to appeal, *de novo* review or *certiorari* proceeding, and as to which no appeal, *de novo* review or *certiorari* proceeding is pending; and (b) as to an order of the FCC, an order that is no longer subject to appeal, review or reconsideration pursuant to 47 U.S.C. §§ 402 and 405, and 47 C.F.R. §§ 1.106, 1.108, 1.110, 1.113, 1.115 and 1.117, and as to which no such appeal, review or reconsideration is pending.

2.22 "Licenses" means the Personal Communications Services licenses granted by the FCC and held by the Debtor as of the Petition Date, consisting of 13 C-Block and two F-Block Licenses covering Basic Trading Areas ("BTAs") in Wisconsin, Iowa and the Upper Peninsula of Michigan as further described in Section 3.3 hereof.

2.23 "Lien" has the meaning ascribed to it in Code § 101(37), which states as follows: "charge against or interest in property to secure payment of a debt or performance of an obligation."

2.24 "MHz Pops" means for a particular License the number of the MHz frequency included in such license multiplied by the total population covered by such license, as shown in Section 3.3 hereof.

2.25 "Miscellaneous Secured Claims" means all Secured Claims not otherwise specifically provided for in this Plan.

2.26 "Partial License" means that portion of a License remaining after Partition or Disaggregation.

2.27 "Partition" means the division of a License into two or more geographic areas, each with a separate FCC authorization.

2.28 "Payment Date" means the fifth Business Day after the Confirmation Date, or with respect to a specific Claim, the fifth Business Day after the date on which such Claim becomes an Allowed Claim pursuant to a Final Order, whichever is later, and is the date on which only Administrative Expense Claims, Priority Claims, Miscellaneous Claims and Convenience Claims will be paid.

2.29 "Petition Date" means May 8, 2006, the date on which the Debtor filed its petition for relief commencing this Case.

2.30 "Plan" means this Third Amended Plan of Reorganization for Airadigm Communications, Inc. dated as of October 6, 2006.

2.31 "Priority Claim" means a Claim, other than an Administrative Expense Claim, entitled to priority under § 507 of the Code.

2.32 "Reorganized Debtor" means the Debtor after the Effective Date.

2.33 "Retained Pro-Rata Portion" means, with respect to a payment for a Partial License that the Reorganized Debtor elects to retain, the fraction determined as follows: 1) the MHz Pops with respect to the Partial License retained by the Debtor, divided by 2) the MHz Pops with respect to the entire License from which the Partial License is Partitioned or Disaggregated.

2.34 "Secured Claim" means any Claim that is secured by a Lien on property of the Debtor's estate that is (a) valid, perfected and enforceable under applicable law and (b) not avoided under the Code or applicable non-bankruptcy law, but only to the extent of the value of such Lien; provided, however, if the holder of such Claim makes the election permitted under Code § 1111(b)(2), then the Claim is secured by such Lien to the extent of the allowed amount of such Claim.

2.35 "Statement of Election" means the written statement of the Debtor setting forth which Licenses and Partial Licenses the Debtor will retain.

2.36 "Surrendered Pro-Rata Portion" means, with respect to a credit for a Partial License surrendered by the Debtor to the FCC, the fraction determined as follows: 1) the MHz Pops with respect to the Partial License surrendered by the Debtor to the FCC, divided by 2) the MHz Pops with respect to the entire License from which the Partial License is Partitioned or Disaggregated.

2.37 "TDS" means Telephone and Data Systems, Inc., a Delaware corporation.

2.38 "TDS Purchased Claim 1" means the Claim originally held by Ericsson, Inc. and assigned to TDS on March 11, 2004, consisting of Claim Nos. 84 and 90, and the Class 2 Claim under The 2000 Plan. Claim No. 84 was filed with the Court on March 9, 2000, in the amount of $3,257,404.70. Claim No. 90 was filed with the Court on March 9, 2000, in the amount of $61,253,363.06. The Class 2 Claim under The 2000 Plan was allowed in the amount of $71 million. TDS was substituted as the holder of this Claim by an order of the Court dated May 13, 2004.

2.39 "TDS Purchased Claim 2" means the Claim originally held by Oneida Enterprise Development Authority of the Oneida Tribe of Indians of Wisconsin and assigned to TDS on July 8, 2004, consisting of Claim No. 89, represented as the Class 3 Claim under The 2000 Plan. Claim No. 89 was filed with the Court on March 10, 2000, in the amount of $40 million. The Class 3 Claim under The 2000 Plan was allowed in the amount of $40 million. TDS was substituted as the holder of this Claim by an order of the Court dated August 4, 2004.

2.40 "WWCC" means Wisconsin Wireless Communications Company, a Wisconsin corporation.

2.41 "The 2000 Plan" means that Plan of Reorganization of Airadigm Communications, Inc. dated October 13, 2000, as confirmed by the Court in Case No. 99-33500-11.

Except as otherwise stated in this Plan, all terms used in this Plan that are defined in the Code have the meanings therein ascribed, and this Plan shall be construed in accordance with the rules of construction contained in Code § 102.

## ARTICLE III
### DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

Claims and interests are hereby designated in the following classes:

3.1 Unclassified Claims consist of all Administrative Expense Claims.

3.2 Class 1 Claims consist of all Priority Claims.

3.3 Class 2 Claims consist of the following Claims of the FCC only if and to the extent that the Court determines by a Final Order in the FCC Adversary Proceeding that such Claims are Secured Claims:

| SUB-CLASS | BTA | MARKET NAME | FREQ. | MHz | MHz POPs | VALUE OF LICENSE* |
|---|---|---|---|---|---|---|
| 2A | 18 | Appleton, Wisconsin | C | 30 | 13,570,650 | $3,906,730 |
| 2B | 70 | Cedar Rapids, Iowa | C | 30 | 8,684,760 | $2,233,396 |
| 2C | 118 | Dubuque, Iowa | F | 10 | 1,797,070 | $502,986 |
| 2D | 123 | Eau Claire, Wisconsin | C | 30 | 5,862,240 | $1,696,320 |
| 2E | 148 | Fond du Lac, Wisconsin | C | 30 | 2,918,880 | $910,215 |
| 2F | 173 | Green Bay, Wisconsin | C | 30 | 10,673,580 | $3,171,140 |
| 2G | 216 | Janesville, Wisconsin | C | 30 | 7,381,980 | $2,471,330 |
| 2H | 234 | La Crosse, Wisconsin | C | 30 | 9,611,010 | $2,618,733 |
| 2I | 272 | Madison, Wisconsin | C | 30 | 20,462,940 | $7,767,768 |
| 2J | 276 | Manitowoc, Wisconsin | C | 30 | 2,486,610 | $774,894 |
| 2K | 279 | Marinette, Wisconsin | F | 10 | 687,100 | $436,956 |
| 2L | 417 | Sheboygan, Wisconsin | C | 30 | 3,379,380 | $1,169,326 |
| 2M | 432 | Stevens Point, Wisconsin | C | 30 | 6,438,510 | $1,707,916 |
| 2N | 462 | Waterloo, Iowa | C | 30 | 7,993,470 | $1,607,621 |
| 2O | 466 | Wausau, Wisconsin | C | 30 | 7,321,440 | $2,033,830 |
| * Based on valuation determination pursuant to Court Order entered on October 4, 2006 | | | | | | |

3.4 Class 3 Claims consist of the following sub-class Secured Claims of TDS:

(a) Sub-Class 3A consists of all Secured Claims of TDS related to the loan made pursuant to Sections 6.2 and 6.3 of The 2000 Plan;

5

(b) Sub-Class 3B consists of all Secured Claims of TDS related to the construction loans made pursuant to Section 6.8 of The 2000 Plan.

(c) Sub-Class 3C consists of all Secured Claims of TDS related to the TDS Purchased Claim 1.

(d) Sub-Class 3D consists of all Secured Claims of TDS related to the TDS Purchased Claim 2.

3.5 Class 4 Claims consist of all Miscellaneous Secured Claims.

3.6 Class 5 Claims consist of all unsecured Claims other than Convenience Claims, including the Claims of the FCC and TDS identified in Sections 3.3 and 3.4 of this Plan to the extent that they are not Secured Claims.

3.7 Class 6 Claims consist of all Convenience Claims.

3.8 Class 7 consists of all Equity Interests in the Debtor.

## ARTICLE IV
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS

4.1 **Payment of Administrative Expense Claims — Generally.** Administrative Expense Claims will be paid in full as follows, unless the holder of any such Claim, the Reorganized Debtor and TDS otherwise agree:

(a) **Professional Fees and Expenses and Administrative Expense Claims Incurred Outside the Ordinary Course of Business.** Administrative Expense Claims for compensation and expenses awarded under Code § 330 and other Administrative Expense Claims arising outside the ordinary course of business will be paid in full on the Payment Date. Applications and requests for the allowance of such Claims must be filed, and notice given in accordance with applicable Bankruptcy Rules, no later than 30 days after the Confirmation Date or such later date as the Bankruptcy Court approves.

(b) **Ordinary Course Administrative Expenses.** Administrative Expense Claims arising in the Debtor's ordinary course of business will be paid without further order of the Court in the Debtor's ordinary course of business and according to the terms of the agreement giving rise to such Claim.

4.2 **U.S. Trustee Fees.** Fees of the United States Trustee, payable under 28 U.S.C. § 1930, shall continue to be payable on their respective due dates in accordance with Code § 1129(a)(12).

# ARTICLE V
# TREATMENT OF CLASSIFIED CLAIMS

5.1 **Class 1 (Priority Claims).** Class 1 Claims are **unimpaired**. On the Payment Date, or such other date as the Reorganized Debtor, TDS and the holder agree, the Reorganized Debtor will pay the holder of each Allowed Class 1 Claim the full amount of such Claim, plus any interest that may be due, in cash.

5.2 **Class 2 (FCC Secured Claims).** Class 2 Claims are **impaired**. Class 2 Claims shall be allowed as Secured Claims in the amounts determined by the Court, and the Reorganized Debtor will satisfy such Class 2 Claims as follows, unless the holder of any such Claim, the Reorganized Debtor and TDS otherwise agree:

(a) **Delivery of Statement of Election.** The Debtor may deliver the Statement of Election to the FCC any time after the Confirmation Date, but must do so no later than the fifth Business Day after the later of (i) the date the Confirmation Order becomes a Final Order; (ii) the date the order or judgment in the FCC Adversary Proceeding determining the validity, priority and extent of the FCC's Liens on all the Licenses becomes a Final Order; (iii) the date the order or judgment determining the amount of all Class 2 Claims becomes a Final Order; and (iv) the date the Debtor obtains all necessary FCC approvals and any other regulatory approvals, on usual and customary terms and conditions, that may be required to effectuate this Plan and such approval or approvals become a Final Order or Final Orders; provided, however the Debtor will not elect to retain a Partial License unless the Debtor has obtained all necessary FCC approvals and any other regulatory approvals for the Partition or Disaggregation.

(b) **Treatment Regarding Retained Licenses (other than Partial Licenses).** With respect to each License that the Debtor elects to retain, the Reorganized Debtor will pay on the FCC Payment Date to the holder of the Class 2 Claim corresponding to such License, the full amount in cash of such Secured Claim. Such payment amount shall not include interest, except as provided in Code § 506(b).

(c) **Treatment Regarding Retained Partial Licenses.** With respect to each Partial License that the Debtor elects to retain, the Reorganized Debtor will pay, on the FCC Payment Date to the holder of the Class 2 Claim corresponding to the License from which the Partial License was Partitioned or Disaggregated, an amount in cash equal to the Retained Pro Rata Portion multiplied by the Class 2 Claim. Such payment amount shall not include interest, except as provided in Code § 506(b).

(d) **Treatment Regarding Surrendered Licenses (other than Partial Licenses).** With respect to each License that the Debtor does not elect to retain as set forth in the Statement of Election, the Reorganized Debtor will surrender all of its rights and interests in that License on the FCC Payment

Date to the holder of the Class 2 Claim secured by that License in full satisfaction of that Claim.

(e) **Treatment Regarding Surrendered Partial Licenses.** With respect to each Partial License that the Debtor does not elect to retain as set forth in the Statement of Election, the Reorganized Debtor will surrender all of its rights and interests in that Partial License on the FCC Payment Date to the holder of the Class 2 Claim secured by the License from which the Partial License was Partitioned or Disaggregated and shall receive a credit against that Claim in an amount equal to the Surrendered Pro Rata Portion of that Claim.

(f) **Treatment in Event of Section 1111(b) Election.** The holder of a Class 2 Claim corresponding to a License or Partial License that the Debtor elects to retain may make the election described in Code § 1111(b) to treat such Class 2 Claim as a Secured Claim no later than the fifth Business Day following the date on which the Debtor delivers the Statement of Election. (With regard to a Class 2 Claim relating to a retained Partial License, the amount of such Claim shall be the amount of the original Claim not satisfied by the Surrendered Pro Rata Portion of that Claim.) If any such holder does so elect treatment under § 1111(b), then, in lieu of the payments described in §§ 5.2(b) and (c) above, the Reorganized Debtor will satisfy such Class 2 Claim as follows:

(i) Such holder will retain its Lien to the extent of the allowed amount of the Secured Claim until such Secured Claim is paid in full without interest.

(ii) On the FCC Payment Date, on account of the Class 2 Claim with respect to which such election is made, the Reorganized Debtor will purchase in its sole discretion either (x) securities representing either an obligation of the United States or an obligation guaranteed by an agency of the United States and backed by the full faith and credit of the United States, or (y) annuity contracts issued by an insurance company having an "A" rating or better from A.M. Best Company or Standard & Poor's, in an amount and on such terms that the holder of such Class 2 Claim will receive, in no more than 30 years, deferred cash payments totaling at least the full amount of such Class 2 claimholder's Secured Claim, of a value, as of the Effective Date, of the Lien that secures such Secured Claim. The securities or annuity contracts will be for the benefit of the holder of such Class 2 Claim, but in the name of the Reorganized Debtor.

(iii) When the holder of the Class 2 Claim has received the payments required by § 5.2(f)(ii), above (either from the proceeds of such securities or annuity contracts, the proceeds of a sale of the

8

corresponding License or Partial License, direct payment by the Reorganized Debtor or any assignee, designee or successor of the Reorganized Debtor, or otherwise), then the Class 2 Claim will be satisfied in full, and such holder will have no further right or interest in or to such securities or annuity contracts, which will then become the exclusive property of the Reorganized Debtor.

(g)     **Release of Liens.**  The holder of a Class 2 Claim will retain its Lien until such Claim is satisfied in accordance with the foregoing, whereupon, without any further action being necessary, the Lien securing such Claim will be released, and the Reorganized Debtor will hold any corresponding License or Partial License that it has retained, free and clear of all liens, claims or encumbrances. At such time, the Reorganized Debtor may make any filings that it determines appropriate to reflect such termination of such Lien.

5.3     **Class 3 (TDS Secured Claims).** Class 3 Claims are **impaired**. The holder of the Class 3 Claims will retain its Liens until such Claims are satisfied in full, at which time such Liens will be released. The Reorganized Debtor will satisfy the Class 3 Claims in full with payments as follows:

(a)     The Class 3 Claims will bear interest on the allowed amount of such Claims from and after the FCC Payment Date at the rate of 10% per annum (or such other rate as the Debtor and TDS agree on or before the Confirmation Date).

(b)     For the first three (3) years after the FCC Payment Date, the Reorganized Debtor will pay only accrued interest in six (6) semi-annual payments, making the first such payment on the first day of the sixth month following the month in which the FCC Payment Date occurs and each of the next five (5) interest payments on the first day of each sixth month thereafter.

(c)     Beginning on the first day of the forty-second month following the month in which the FCC Payment Date occurs, the Reorganized Debtor will make equal semi-annual installment payments of principal plus accrued interest amortized over a term of eighty-four (84) months, with a balloon payment on the first day of the one-hundred-second month after the month in which the FCC Payment Date occurs of the entire unpaid balance of principal and accrued interest. At such time, the Reorganized Debtor may make any filings that it determines appropriate to reflect such termination of the Liens securing Class 3 Claims.

5.4     **Class 4 (Miscellaneous Secured Claims).** Class 4 Claims are **unimpaired**. On the Payment Date, the Reorganized Debtor will at its election either: (i) pay in cash the balance due and owing on each Allowed Class 4 Claim plus any interest that may be due, or (ii) surrender the collateral securing the Claim to the holder of the Allowed Class 4 Claim, in full and complete satisfaction of said Class 4 Claim. Holders of Allowed Class 4 Claims will retain their Liens until such payment or surrender, at which time, such Liens will be released without any further action.

5.5  **Class 5 (Unsecured Claims other than Convenience Claims).**
Class 5 Claims are **impaired.** On the later of (a) the FCC Payment Date and (b) the date their Claims are allowed, holders of Allowed Class 5 Claims will receive shares of voting, common stock in the Reorganized Debtor. The Reorganized Debtor, in full satisfaction of such Claims, will issue (i) one share of common stock for each $500,000 of each such Claim, and (ii) fractional shares for the balance of any such Claim that is not satisfied by the issuance of whole shares or for any such Claim that is allowed in an amount less than $500,000.

5.6  **Class 6 (Convenience Claims).** Class 6 Convenience Claims are **impaired.** On the Payment Date, the Reorganized Debtor will pay, in cash, the full amount of each Allowed Class 6 Claim, without interest.

5.7  **(Class 7) (Equity Interests).** Class 7 Interests are **impaired.** On the FCC Payment Date, all Equity Interests will be canceled, and the rights and interests of all holders of Equity Interests will be terminated.

## ARTICLE VI
## MEANS OF IMPLEMENTATION OF THE PLAN

6.1  **The Confirmation Loan.** If the Reorganized Debtor does not have sufficient cash to make any cash payment required by Sections 5.2(b), 5.2(c) and 5.2(f)(ii) (to purchase securities or annuity contracts in accordance with Section 5.2(f)) of this Plan, then, on the FCC Payment Date, TDS or its designee will make the Confirmation Loan in the amounts necessary to make such cash payment, provided all conditions to such payment have been satisfied. The obligation of TDS to make the Confirmation Loan shall be conditioned on, and subject to, the delivery of the Statement of Election and filing of such applications as required under Section 6.4 of this Plan, in form and substance reasonably satisfactory to TDS.

6.2  **Terms of the Confirmation Loan.** The amount of the Confirmation Loan will be added to the Allowed Class 3 Claims, will be secured by the same Liens as secure those Claims, and will be paid on the same terms as provided in Section 5.3 of this Plan.

6.3  **Conversion of Debt to Equity.** The Reorganized Debtor will take all steps necessary to cause the authorization and issuance of sufficient shares of common stock in the Reorganized Debtor to satisfy Class 5 Claims in accordance with Section 5.5 of this Plan. Such transfers are intended to be the type of transfer exempt from registration under Code § 1145(a)(1)(A).

6.4  **Applications for regulatory approval.** As soon after the Confirmation Date as practicable, the Debtor will file such applications as may be required to obtain any FCC or other regulatory approvals necessary to implement this Plan.

# ARTICLE VII
# EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1 **Treatment of Contracts and Leases.** Except to the extent the Bankruptcy Court orders otherwise on motion of the Debtor filed no later than 30 days after the Effective Date, all executory contracts and unexpired leases of the Debtor will be deemed assumed under Code § 365 as of the thirty-first day after the Effective Date. If any party to such a contract or lease wishes to object to such assumption, or alleges that there is a default under such contract or lease that must be cured under Code § 365(b), that party must file an objection no later than 30 days after the Effective Date. If no such objection is filed by that date, that party's objection or allegation of a default will be forever barred and may not be asserted in any subsequent proceeding in any forum.

# ARTICLE VIII
# RELEASE OF CLAIMS

8.1 General Release of Claims.

(a) On the Effective Date, any and all of the Debtor's claims, rights, causes of action and remedies under Code §§ 541, 544, 545, 547 through 551, and 553 will be released and barred, and no proceeding under any such section shall be commenced; provided, however, that any such proceeding commenced by the Debtor before the Effective Date is excepted from this paragraph of this Plan and is retained and may be enforced by the Reorganized Debtor. Without limiting the foregoing, the FCC Adversary Proceeding is not affected by this Plan.

(b) On the Effective Date, any and all Claims of the Debtor against TDS shall be released and forever discharged. Except as expressly provided in this Plan, as of the Effective Date, neither TDS, its affiliates, parents or subsidiaries, nor any of its respective members, shareholders, officers, directors, employees, agents, attorneys, or professionals shall have or incur any liability to the Debtor, the Reorganized Debtor, or to any holder of any Claim or equity interest for any act or omission arising out of or in connection with the Case, the confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or property to be distributed under this Plan, except for willful misconduct.

# ARTICLE IX
# CONDITIONS TO CONFIRMATION AND
# EFFECTIVENESS OF THE PLAN

9.1 **Conditions Precedent to Confirmation.** Confirmation of this Plan will not occur unless the Debtor and TDS have approved this Plan and the form of the Confirmation Order.

9.2 **Effective Date.** This Plan will be effective, and the Effective Date will occur, on the eleventh day (or, if that is not a Business Day, the first Business Day thereafter)

11

after the Confirmation Date, unless the Confirmation Order has been stayed before such eleventh day, in which event the Effective Date will be the first Business Day after such stay is terminated.

## ARTICLE X
## EFFECT OF CONFIRMATION

      10.1   **Re-vesting of Assets**. Except as expressly provided in this Plan, on the Confirmation Date, all property of the Debtor's estate will vest in the Reorganized Debtor pursuant to Code § 1141(b), free and clear of all liens, claims and encumbrances.

      10.2   **Extinguishment of Liens**. Except as expressly provided in this Plan, all Liens on property of the Debtor's estate will be extinguished on the Confirmation Date.

      10.3   **Discharge**. Except as expressly provided in this Plan, on the Confirmation Date, pursuant to Code § 1141(b), the Debtor will be discharged from all Claims and all Administrative Expense Claims, to the fullest extent authorized by the Code.

      10.4   **Discharge Injunction**. Except as provided in Sections 10.5 and 10.6 hereof, and in addition to the injunctions provided in § 524(a) of the Code, from and after the Confirmation Date, holders of Claims against the Debtor or its assets shall be enjoined from: (a) commencing or continuing any action or proceeding or employing process against the Debtor, the Reorganized Debtor, the property of either of them, or the holders of equity interests of either of them, in an attempt to obtain or realize partial or full satisfaction of any Claim; (b) enforcing or seeking to enforce any such Claim, or taking any steps which will lead to the enforcement of any such Claim against Debtor, the Reorganized Debtor, the property of either of them, or the holders of equity interests of either of them; (c) seeking to set off or recoup any such Claim against any pre-petition or post-petition obligations owed to Debtor, the Reorganized Debtor or a successor in interest of Debtor; (d) seeking to create, perfect or enforce any Lien against property of the Debtor or the Reorganized Debtor or the holders of equity interests of either of them; and (e) taking all other acts against the Debtor, the Reorganized Debtor, the property of either of them, or the holders of equity interests of either of them, including but not limited to those acts described in Code § 362(a).

      10.5   **FCC Regulatory Powers**. Notwithstanding any other provision in this Plan to the contrary, the FCC's exercise of its regulatory rights, powers and duties with respect to the Licenses is not enjoined or in any way limited, restricted or affected by this Plan; provided, however, that this Plan shall govern the treatment of Claims and Liens held by the FCC against the Debtor or the Debtor's property.

      10.6   **Plan Enforcement**. Notwithstanding Section 10.4 hereof, after the Confirmation Date, the holder of an Allowed Claim may enforce its rights under this Plan against the Reorganized Debtor and the assets of the Reorganized Debtor.

# ARTICLE XI
# RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

After the Confirmation Date, the Bankruptcy Court will retain jurisdiction for all appropriate purposes to the extent permitted by applicable law, including but not limited to the following:

11.1     To consider any modification to this Plan, or to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or in the Confirmation Order, to the extent necessary to carry out the purposes and intent of this Plan.

11.2     To hear and determine any objections to the allowance of Claims and requests for estimation of Claims.

11.3     To hear and determine any and all applications, adversary proceedings, motions and other contested matters not resolved in this Plan.

11.4     To hear and determine any and all applications for compensation of professional services and disbursements and any other similar fees incurred prior to the Confirmation Date.

11.5     To enforce the terms and provisions of payments, rights and interests required or created by this Plan, or by earlier orders of the Court.

11.6     To enter any order necessary to consummate, interpret, and effect the provisions of this Plan and the Confirmation Order, or as may otherwise be required by the Code.

# ARTICLE XII
# MISCELLANEOUS PROVISIONS

12.1     **Retiree and Other Employee Benefits**. No employee benefits will be affected by this Plan. To the extent the Debtor is obligated to provide retiree benefits, as that term is defined in Code § 1114, the Reorganized Debtor will continue to provide such benefits for the duration of the period that the Debtor has obligated itself to provide such benefits.

12.2     **Prohibition on Issuance of Nonvoting Equity Securities**. The Debtor's charter shall be amended, if necessary, so that it includes a provision prohibiting the issuance of non-voting equity securities. There is only one class of securities that possesses voting power.

12.3     **Governing Law**. Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws are applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with this Plan, the construction, implementation and enforcement of this Plan and all rights and obligations arising under this Plan shall be governed by, and construed and enforced in

accordance with, the laws of the State of Wisconsin, without giving effect to conflicts-of-law principles which would apply the law of a jurisdiction other than the State of Wisconsin or the United States of America.

12.4 **No Admissions or Adjudications.** Notwithstanding anything in this Plan to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or interest or the propriety of any classification of any Claim or interest. Except as expressly stated in this Plan, nothing in this Plan is an adjudication of any disputed Claim, Secured Claim or the FCC Adversary Proceeding.

12.5 **Debtor's Obligations Limited to Plan.** This Plan and, to the extent applicable, the Bankruptcy Code set forth all of the Debtor's obligations and undertakings relating to the matters dealt with in this Plan, and this Plan supersedes all prior discussions and documents. The Debtor is not bound by any statements, terms, warranties, understandings, or representations with respect to the subject matter of this Plan, other than as expressly provided for in this Plan.

Respectfully submitted this 6th day of October, 2006.

**AIRADIGM COMMUNICATIONS, INC.**

By _____
Robert J. Galle, Chief Executive Officer

---

GOLDBERG KOHN BELL BLACK
 ROSENBLOOM & MORITZ, LTD.
Ronald Barliant
Alan P. Solow
Kathryn A. Pamenter
55 East Monroe Street
Suite 3700
Chicago, Illinois 60603
Telephone: (312) 201-4000
Facsimile: (312) 332-2196